UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAMON THOMAS,

     *Plaintiff*,

     v.

DISTRICT OF COLUMBIA,

     *Defendant*.

Civil Action No. 22-1269 (TJK)

## MEMORANDUM OPINION

Damon Thomas was a special police officer for the District of Columbia Public Schools when he shot himself in his hand at a firearm training. Thomas's regrettable gunshot injury caused him a permanent partial disability. The District of Columbia later fired Thomas because, given his disability, he could not perform certain functions required of special police officers. Thomas sued. He alleges that the District failed to accommodate his disability in violation of four antidiscrimination laws—the American with Disabilities Act, Rehabilitation Act, District of Columbia Human Rights Act, and Title VII of the Civil Rights Act of 1964. The District now moves to dismiss. Because Thomas has stated none of these claims, the Court will grant the motion.

## I.    Background

Thomas alleges he was employed as a special police officer ("SPO") with the District of Columbia Public Schools ("DCPS") Police Department, beginning in 2015. ECF No. 1 ("Compl.") ¶ 14. On March 18, 2018, at a work-related gun-training session, Thomas accidentally discharged a firearm and shot himself in his left hand, causing "a permanent partial disability to his dominant hand." *See id.* ¶¶ 15, 28, 37. After surgery, Thomas temporarily returned to work in a light-duty

position with the District's Department of Behavioral Health.  *See id.* ¶ 15.  That work aggravated

his injury, though, leading Thomas to receive another surgery.  *Id.* ¶ 17.

Over a year after his injury, the District permitted Thomas to return to full-duty work with

the DCPS Police Department.  Compl. ¶ 19.  But then, a doctor examined Thomas and reported

that Thomas "feels like he cannot fire a gun safely; and in [the doctor's] opinion, he is unable to

fire a gun."  ECF No. 1-3 ("Compl. Exs.") at 11; *see also id.* at 84.  The doctor concluded that

Thomas's restrictions were "permanent," and that because of them, "[Thomas could] no longer

do" the job of SPO.  *Id.* at 11.  In line with this report, DCPS determined that it could not accom-

modate Thomas's inability to use a firearm safely.  *See* Compl. ¶ 20; Compl. Exs. at 57 (District

officials internally noting that "[Thomas] now has permanent restrictions.  He has a 10-lb weight

restriction (w/ left hand).  He's unable to safely use a firearm with his left hand.").  And in an email

to Thomas, a DCPS official explained that "[a]s it has been communicated to us that you would

not be able to safely operate a firearm, and this is a requirement of your previous position, you

would not be qualified for that role."  Compl. Exs. at 31.  In the end, Thomas "was informed that

his 'career [was] terminated'" as of July 17, 2020.  Compl. ¶ 21.

In response to his termination, about a year later in July 2021, Thomas emailed DCPS to

request "help, specifically EEOC and ADA accommodations."  Compl. ¶ 23; *see also* Compl Exs.

at 129–33.  Thomas "request[ed] placement under [the] ADA for the disabled prior to [his] tenure

with the DCPS government being terminated."  Compl. Exs. at 132.  He said he wanted to "con-

tinue [his] tenure in the DC government," and he expressed that he felt he was "being kicked to

the curb without DCPS extending the option of working as a janitor or in the cafeteria," for

example.  *Id.* at 132–33.  Thomas's efforts were allegedly "met with silence instead of reasonable accommodation."  Compl. ¶ 23.[1]

Thomas then filed a formal charge with the EEOC, Compl. ¶ 24, alleging that the District violated the Americans with Disabilities Act of 1990 ("ADA") by discriminating against him based on his disability between March 28, 2018, the day he was injured, and July 17, 2020, when he was terminated, *see* Compl. Exs. at 48–50.  The EEOC dismissed the charge as untimely.  *See* Compl. ¶ 24; Compl. Exs. at 51–55.  Thomas alleges that he contacted his employer again later, constituting "another request for ADA accommodation and offboarding benefits."  Compl. ¶ 25.

Proceeding pro se and in forma pauperis, Thomas sued on May 9, 2022, alleging that the District of Columbia discriminated against him by failing to accommodate his disability.  Compl. ¶ 1.  He brings such failure-to-accommodate claims under four laws: the ADA, 42 U.S.C. § 12101, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  *See* Compl. ¶¶ 30–51.  Implicitly acknowledging that he failed timely to exhaust administrative remedies for his ADA and Title VII claims, he asks the Court to apply equitable tolling or equitable estoppel to reach those claims.  *Id.* ¶¶ 7–13.

The District now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 8.  It contends, first, that Thomas's ADA and Title VII claims fail on exhaustion grounds and that equitable tolling and estoppel should not apply, *see* ECF No. 8-1 at 4–6.  Second, it argues

---

[1] Separate from his pursuit of accommodations from the District, and in proceedings unrelated to the instant litigation, Thomas administratively pursued workers' compensation and medical benefits.  *See* Compl. ¶¶ 16, 18, 22, 27.  Some of those proceedings were ongoing as of the filing of Thomas's complaint.  *Id.* ¶ 27.

that Thomas's Rehabilitation Act and DCHRA claims are barred by the statutes of limitations, *see id*. at 4, 6–7.  And third, it says that all four claims should otherwise be dismissed for failure to state a claim on which relief may be granted.  *See id*. at 2–3.  Thomas opposes.  ECF No. 11.

II.     **Legal Standard**

A motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's complaint.  *See Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017).  To overcome such a motion, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Doing so requires alleging sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In considering a motion to dismiss for failure to state a claim, the Court must treat a complaint's factual allega-tions as true and grant the plaintiff the benefit of all inferences that can flow from the facts alleged.  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  A court may "consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

Further, when a plaintiff proceeds pro se, the Court must construe the complaint "liberally."  *See Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 322 (D.D.C. 2017).  And the Court typically "should look to all filings, including filings responsive to a motion to dismiss, to discern whether the [pro se] plaintiff has nudged her claims across the line from conceivable to plausible."  *See Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018) (cleaned up).  That said, the "complaint must still present a claim on which the Court can grant relief."  *See Untalasco*, 249 F. Supp. 3d at 322 (internal quotation marks omitted).  And in assessing this, the Court need not

accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *See Peavey v. United States*, 128 F. Supp. 3d 85, 93 (D.D.C. 2015). Nor is it "the Court's job to canvass the record for documents supporting a *pro se* party's position." *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015), *aff'd*, 686 F. App'x 5 (D.C. Cir. 2017).

**III.     Analysis**

The Court will grant the District's motion to dismiss for failure to state a claim. Thomas fails to state a claim under Title VII because that statute does not provide a cause of action for disability discrimination. And as for his claims under the ADA, Rehabilitation Act, and DCHRA, Thomas fails to state a claim for failure to accommodate. He has not alleged that he could perform the essential functions of his SPO position—or any other position to which he sought reassignment—such that the District could have reasonably accommodated his disability.

Although the District's arguments that Thomas's ADA and DCHRA claims are time-barred for various reasons may well be meritorious, the Court proceeds to resolve the motion to dismiss on other Rule 12(b)(6)) grounds with respect to the ADA, Rehabilitation Act, and DCHRA claims for two reasons. First, it is the most efficient way to resolve the motion. As explained below, the Court finds that the Rehabilitation Act claim is timely, and so it must address whether this claim—which rises and falls with the remaining two—is adequately pled regardless. And second, there is no jurisdictional barrier to the Court doing so. Neither the argument that Thomas did not exhaust his administrative remedies for his ADA claim nor the argument that the statute of limitations bars his DCHRA claim implicate the Court's subject-matter jurisdiction. *See Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 102 (D.D.C. 2008) (finding in ADA case that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"

(quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))); *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 105 (D.D.C. 2009) ("[T]ime prescriptions are not properly typed 'jurisdictional' and a motion to dismiss a DCHRA claim as time-barred does not involve the court's jurisdiction." (cleaned up)).

### A.    Thomas Fails to State a Claim Under Title VII

Thomas has failed to state a Title VII claim for disability discrimination.  Title VII prohibits employment discrimination "based on race, color, religion, sex, or national origin"—not disability. 42 U.S.C. § 2000e-16(a).  In federal law, "disability claims are governed by the Rehabilitation Act," and, at times, by the ADA, but "not by Title VII."  *See Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 n.6 (D.D.C. 2009); *Hagos v. Pompeo*, No. 18-cv-2647, 2020 WL 2308584, at *3 (D.D.C. May 7, 2020).  Thus, courts dismiss disability-discrimination claims improperly brought under Title VII.  *See Henneghan v. D.C. Pub. Sch.*, 597 F. Supp. 2d 34, 37–38 (D.D.C. 2009) (noting Title VII does not "address[] disability discrimination" and dismissing sua sponte the plaintiff's Title VII claim because "the plaintiff's factual allegations of disability discrimination do not state a claim upon which relief may be granted as to [that] cause[] of action").  To be sure, a plaintiff may ground a Title VII claim on an employer's failure to accommodate a disabled individual when the source of the discrimination is that person's membership in a protected class.  *Dorchy v. WMATA*, 45 F. Supp. 2d 5, 15 (D.D.C. 1999).  But Thomas's Title VII claim is premised only on the District's alleged discrimination based on Thomas's disability, not on any membership he had in a protected class *under Title VII*.  Compl. ¶¶ 47–51.  Thus, he has failed to state a Title VII claim, and the Court will dismiss that claim.

B.     **Thomas's ADA, Rehabilitation Act, and DCHRA Claims Must be Dismissed Too**

Beyond Title VII, Thomas invokes three other statutes—the ADA, Rehabilitation Act, and DCHRA—to allege a disability discrimination claim based on a failure to accommodate.  Compl. ¶¶ 1(a), (c)–(d), 30–46.

1.     **Thomas's Rehabilitation Act Claim Is Not Time-Barred**

Thomas tries to allege disability discrimination based on the District's purported failure to accommodate under Section 504 of the Rehabilitation Act.  ECF No. 35–39; *see* 29 U.S.C. § 794(a).  The District first moves to dismiss this claim because, it argues, the applicable statute of limitations is one year, and Thomas failed to bring suit within one year.  ECF No. 8-1 at 6.  The District is mistaken.

The Rehabilitation Act does not itself contain a statute of limitations.  *Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 95 (D.D.C. 2016).  So courts "borrow" from "an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies."  *Alexander v. WMATA*, 826 F.3d 544, 551 (D.C. Cir. 2016) (quotation omitted).  Until recently, courts have remarked that "it is not settled whether the most analogous state statute is the statute for personal injury claims, D.C. Code § 12–301(8), or the District of Columbia Human Rights Act, D.C. Code § 2–1403.16(a)," with the former giving three years and the latter giving one.  *Owens-Hart*, 220 F. Supp. 3d at 95 (citing cases).  In its motion, the District relies on *Jaiyeola v. District of Columbia*, 40 A.3d 356 (D.C. 2012), in which the District of Columbia Court of Appeals held "that the [DC]HRA's one-year statute of limitations governs § 504 claims [for discrimination] in this jurisdiction."  *Id.* at 368.

But since the parties' briefing, the D.C. Circuit weighed in on this unsettled question and disagreed with *Jaiyeola*.  Although the case dealt with a Title VI claim, not a Rehabilitation Act

7

claim, the Circuit expressly rejected *Jaiyeola*'s application of the DCHRA's one-year limitations period to a Rehabilitation Act claim. *Stafford v. GW Univ.*, 56 F.4th 50, 54 (D.C. Cir. 2022).  The *Jaiyeola* court had chosen the DCHRA's one-year period over the three-year period for personal injuries on its view that "personal injuries were a poor analogy for civil rights claims." *Id.*  The Circuit held this conclusion "conflicts with" the Supreme Court's "quite clear" precedent that "discrimination is 'a fundamental injury to the individual rights of a person,' a quintessential personal injury." *Id.* (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)).  The Circuit refused to "evaluate the similarities between Title VI and the DCHRA" rather than apply Supreme Court precedent "to answer a federal question of statutory construction." *Id.* at 55.  And the "answer is unmistakable: the 'most analogous' statute of limitations for Title VI is the three-year residual limitations period for unspecified personal injuries." *Id.*  More generally, the Circuit made clear that "personal injury statutes of limitations [apply] to federal civil rights causes of action," a conclusion it did not cabin to Title VI.  *See id.* at 53–54.

Thus, in light of *Stafford*, the Court applies a three-year statute of limitations to Thomas's Rehabilitation Act claim.  Thus, Thomas had three years from July 17, 2020, when he was dismissed from his SPO post, to sue.  Compl. ¶ 21.  He filed his lawsuit on May 5, 2022, well within that window, so this claim is timely.

> ### 2. Thomas Has Failed to State a Claim Under the ADA, Rehabilitation Act, or DCHRA

Because the Court finds that Thomas has timely brought his Rehabilitation Act claim, the Court turns to the District's argument that he has otherwise failed to state a claim under the statute. ECF No. 8-1 at 7–8.  Thomas's ADA and DCHRA claims, however, turn on the same analysis. *Id.*  Thus, the Court will consider whether Thomas has stated a claim under those statutes alongside

its analysis of his Rehabilitation Act claim.  And for the below reasons, the Court finds Thomas has failed to state a claim under either the ADA, Rehabilitation Act, or DCHRA.

Thomas raises failure-to-accommodate claims under these three statutes.  Compl. ¶¶ 30–46; *see also id.* ¶ 1.  All three claims are governed by the same standards, with the ADA as the common thread.  *See Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 96 (D.D.C. 2019) ("DCHRA failure to accommodate claims 'are analyzed in the same manner as an ADA . . . claim.'" (citation omitted)); *Owens-Hart*, 220 F. Supp. 3d at 95 ("The elements of a failure-to-accommodate claim are the same under both the ADA and the [Rehabilitation Act].");  29 U.S.C. § 794(d) (incorporating "standards" from ADA to govern discrimination claims under Rehabilitation Act); *see also Owens-Hart*, 220 F. Supp. 3d at 96 ("[T]he same standard governs [Rehabilitation Act], ADA, and DCHRA claims.").

"Failure-to-accommodate claims require the plaintiff to demonstrate that (1) he was a qualified individual with a disability, (2) the defendant had notice of the disability, and (3) the defendant denied the plaintiff's request for a reasonable accommodation."  *Taylor v. Pompeo*, No. 19-cv-2987 (CRC), 2021 WL 7904001, at *4 (D.D.C. Jan. 6, 2021) (Rehabilitation Act); *see also Seth v. District of Columbia*, No. 18-cv-1034 (BAH), 2018 WL 4682023, at *13 (D.D.C. Sept. 28, 2018) (ADA and Rehabilitation Act); *George v. Molson Coors Beverage Co. USA, LLC*, No. 20-cv-1914 (TNM), 2022 WL 2643537, at *5 (D.D.C. July 8, 2022) (DCHRA and ADA).

As for his SPO position, Thomas has not alleged the first element.  Under that element, Thomas must allege he is a "qualified individual with a disability."  *See* 29 U.S.C. § 794(a) (Rehabilitation Act); 42 U.S.C. § 12132 (ADA); *Crockett v. District of Columbia*, No. 16-cv-1357 (RDM), 2020 WL 1821121, at *13 (D.D.C. Apr. 10, 2020) (DCHRA).  "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."  *Se.*

*Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979).  That is, a plaintiff must allege that, "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that such individual holds or desires."[2]  42 U.S.C. § 12111(8); *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 5 (D.C. Cir. 2010) ("[T]he DCHRA is to like effect"); *George*, 2022 WL 2643537, at \*5 (same).  "Hence, to state a claim for failure to accommodate, a plaintiff must . . . allege facts sufficient to show that . . . he could perform the essential functions of the position with the requested reasonable accommodation." *Sun v. D.C. Gov't*, No. 12-cv-1919 (ABJ), 2014 WL 12791905, at \*1 (D.D.C. Oct. 22, 2014) (cleaned up) (quoting *Hodges,* 959 F. Supp. 2d at 153–54).

But Thomas's complaint contains no allegations about the essential functions of his SPO position, let alone that he could perform those functions with or without a reasonable accommodation.  That is not altogether surprising, given the information in the exhibits he has attached to the complaint.  In February 2020, almost two years after the accident, the doctor who examined Thomas reported that he was "unable to fire a gun."  Compl. Exs. at 11.  The doctor concluded this restriction was "permanent," and because of it, he could "no longer do" the job of SPO, for which

---

[2] In the context of failure-to-accommodate claims, some courts treat the requirement that a plaintiff allege he could perform the essential functions of the position as an element separate from the requirement that the plaintiff allege he is a qualified individual with a disability. *See, e.g.*, *Thompson v. Rice*, 422 F. Supp. 2d 158, 165–66 (D.D.C. 2006) (requiring a plaintiff bringing Rehabilitation Act failure-to-accommodate claim show both "that [she] was an individual who had a disability within the meaning of the statute" and "that with reasonable accommodation [she] could perform the essential functions of the position" (quotation omitted)), *aff'd*, 305 F. App'x 665 (D.C. Cir. 2008); *Hodges v. District of Columbia,* 959 F. Supp. 2d 148, 153–54 (D.D.C. 2013) (requiring that a plaintiff bringing ADA and DCHRA failure-to-accommodate claims both "allege facts sufficient to show that . . . he had a disability within the meaning of the ADA; [and that] . . . he could perform the essential functions of the position with reasonable accommodation").  Whether considered as part of the "qualified individual with a disability" element or as a standalone element, to state a claim for a failure to accommodate, a plaintiff must allege he could perform the essential functions of his role with a reasonable accommodation.

it "was necessary for him to carry a gun and be able to fire his gun." *Id.* The District then concluded that Thomas's "permanent work restrictions could not be accommodated." Compl. ¶¶ 20, 44. Specifically, District officials said: "[Thomas] now has permanent restrictions. He has a 10-lb weight restriction (w/ left hand). He's unable to safely use a firearm with his left hand." Compl. Exs. at 57. Later, officials emailed Thomas memorializing the District's view: "[a]s it has been communicated to us that you would not be able to safely operate a firearm, and this is a requirement of your previous position, you would not be qualified for that role." Compl. Exs. at 31. Thomas himself concedes that he was "unable to perform his job after the injury." Compl. ¶ 29. So Thomas has, as the District argues, failed to allege that "he could safely operate a firearm—an essential function of his job as a special police officer." ECF No. 8-1 at 7. With no allegations that he could do so, or that operating a firearm was not an essential function of that position, he has not alleged that he can perform "the essential functions of the employment position that [he] holds," and thus, he has not so alleged a failure-to-accommodate claim. *See* 42 U.S.C. § 12111(8).

Thomas also alleges that he sought to be reassigned to a job other than his SPO position. But none of these allegations amounts to stating a claim for failure to accommodate either, for similar reasons. He alleges that other "[l]imited duty positions exist and could be conceived and placement could be enacted" by the District. Compl. ¶ 37. An exhibit to the complaint indicates that in September 2020, Thomas told the District that he could "work unarmed, with accommodations, with [his] disability" and that he had "applied for several other positions within DCPS." Compl. Exs. at 215. He also submitted a blanket request to "be considered for every position [he] can possibly fill." *Id.* Another exhibit reflects Thomas's regret, nearly a year later in July 2021, that the District had not given him "the option of working as a janitor or in the cafeteria." *Id.* at

11

130, 133.  The following week, he told the District, "I would like to continue working for the government in *any* capacity to provide for my family."  *Id.* at 16 (emphasis added).  And in his opposition, he clarifies that he is "hoping for this court's help in moving on in one of the many roles that exist within the city for which he is qualified and statutorily guaranteed under protections of the ADA."  ECF No. 11 at 7.

The problem for Thomas on this front is that he has failed to plead a vacant position he sought, and for which he was qualified, at the time he requested reassignment, so as to state a failure-to-accommodate claim.  True, a person is a "qualified individual" if he can perform the "essential functions" of another position he "desires," and thus a reasonable accommodation "may include . . . reassignment to a vacant position."  42 U.S.C. § 12111(8), (9)(B); *see also Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1300–01 (D.C. Cir. 1998).  Employers do not, however, "have to reassign an employee to a position for which he is not otherwise qualified, a position that would be a promotion, if reassignment would be an undue hardship on the operation of the business of the employer, or if no vacant position exists; furthermore, 'employers are not required to "bump" an employee, or create a new position' to allow for reassignment."  *Cong. v. Gruenberg*, No. 19-cv-01453 (CKK), 2022 WL 17356878, at *13 (D.D.C. Dec. 1, 2022) (quoting *Aka*, 156 F.3d at 1305).  Ultimately, "it is the plaintiff's burden to identify available positions and to demonstrate that she was qualified for those positions."  *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 60 (D.D.C. 2012) (cleaned up).  After all, "reassignment can only be to an existing, vacant job for which the plaintiff is qualified."  *Harris v. Chao*, 257 F. Supp. 3d 67, 76 (D.D.C. 2017) (cleaned up).  And importantly, a plaintiff's burden includes showing that "a suitable vacancy existed *at the time she sought transfer*."  *Mitchell v. Pompeo*, No.15-cv-1849 (KBJ), 2019 WL 1440126, at *10

(D.D.C. Mar. 31, 2019) (emphasis added) (quoting *Alston v. WMATA*, 571 F. Supp. 2d 77, 82 (D.D.C. 2008)).

Thus, Thomas's vague reassignment-related allegations do not state a claim for failure to accommodate him.  In other words, even setting aside his SPO position, he has failed to allege he is a "qualified individual" based on some other position he desired at the time, because he has failed to allege any facts that he could "perform the essential functions" of any such position.  *See* 42 U.S.C. § 12111(8).

Finally, some of Thomas's allegations suggest that the District failed to help him enough in seeking a reassignment.  Compl. ¶ 8; *see also* ECF No. 11 at 6.  But those assertions, on their own, are also not enough to cure the defects in his complaint described above.  It is true that "[o]nce an employee has requested reassignment, the employer has a duty to engage in an interactive process with the employee to determine whether there is a job she can perform given her limitations." *Alston*, 571 F. Supp. 2d at 82.  And employers must "help [plaintiffs] identify appropriate job vacancies (since plaintiffs can hardly be expected to hire detectives to look for vacancies)." *Aka*, 156 F.3d at 1304 n.27; *Butler v. WMATA*, 275 F. Supp. 3d 70, 85 (D.D.C. 2017) ("the disabled employee must be given more assistance than other job applicants").  But these process-based allegations cannot make up for his failure to allege a vacant position he sought, and for which he was qualified, at the time he requested an accommodation.  "To prevail on her reasonable accommodation claim . . . plaintiff must show more than that her employer failed to engage in the interactive process.  She must demonstrate 'that a reasonable accommodation was possible and would have led to a reassignment position.'" *Alston*, 571 F. Supp. 2d at 82 (citation omitted).  Accordingly, "there is no independent cause of action for failure to engage in the interactive process."

*Doak v. Johnso*n, 19 F. Supp. 3d 259, 278 n.20 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir.

2015).[3]

     For these reasons, Thomas has failed to state a claim for a failure to accommodate under

the ADA, Rehabilitation Act, and DCHRA.[4]   The Court will accordingly dismiss these three re-

maining claims.

---

[3] In addition, "an employer is liable *only* if it bears responsibility for the breakdown of the inter-
active process . . . because it ended the back and forth or participated in bad faith."  *McLane v.
Haaland*, No. 12-cv-1397 (CRC), 2022 WL 782409, at *4 (D.D.C. Mar. 15, 2022) (cleaned up).
Thomas's allegations do not come close to plausibly alleging either of those scenarios.  In fact,
materials attached to the complaint suggest that the District *did* "engage in an interactive process
with [Thomas] to determine whether there is a job [he] can perform given [his] limitations."  *Al-
ston*, 571 F. Supp. 2d at 82.  After ruling Thomas out for working as an SPO, the District made
such efforts explicit.  On June 24, 2020, it told Thomas: "Please review the attached vacancies . . .
to see if you are interested and qualified for any of [them] . . . . Should you see any positions of
interest and believe that you meet the qualifications please respond with those positions by close
of business on Friday June 26, 2020."  Compl. Exs. at 24–25.  Thomas thought it would not "be
fair to ask [him] to choose from the open job listing" at that time, since he was waiting from more
guidance from his doctors.  *Id.* at 21.  But then again, on June 30, 2020, the District reached out to
him with a similar request, concluding: "[o]nce we are able to determine a position you are able to
occupy with or without a reasonable accommodation, we will be able to move forward with next
steps."  Compl. Exs. at 31.  Thereafter, according to the complaint and attached exhibits, it does
not appear Thomas responded to the District with the requested information.  *Id.* at 32, 41, 42, 44,
215.

[4] Thomas characterizes his lawsuit as a "failure to accommodate action," Compl. ¶ 1, but at times
he refers more generally to "disability discrimination," *id.* at 1, 8, 10–11, 13–14.  Courts regularly
treat failure-to-accommodate claims as a subset of the umbrella term, "disability discrimination."
*See, e.g.*, *Johnson v. Joseph J. Magnolia, Inc.*, No. 21-cv-772 (BAH), 2021 WL 5331708, at *4
(D.D.C. Nov. 16, 2021) (noting the "[f]our types of disability discrimination claims [that] are cog-
nizable under the ADA" including "failure to accommodate"); *Austin v. WMATA*, No. 19-cv-2718
(DLF), 2020 WL 2962609, at *7 (D.D.C. May 28, 2020) ("The Rehabilitation Act bars several
types of [disability] discrimination, including . . . failure to accommodate.") *McKnight-Nero v.
Walmart, Inc.*, No. 20-cv-1541 (APM), 2021 WL 663315, at *4 (D.D.C. Feb. 19, 2021) (A "plain-
tiff may base a claim of disability discrimination [under the DCHRA] on one of three theories of
liability" including "failure to accommodate.").  Given Thomas's stated focus on the District's
alleged failure to accommodate throughout his complaint and opposition, the Court construes
Thomas's references to "disability discrimination" as interchangeable with "failure to accommo-
date."

**IV.     Conclusion**

For all these reasons, the Court will grant Defendant's motion to dismiss, ECF No. 8, and

dismiss Thomas's complaint.  But for the moment, it will not dismiss the case.  The Court cannot

entirely rule out the possibility that Thomas could cure the deficiencies in the complaint that the

Court has identified.  Thus, it will permit him to seek leave to file an amended complaint by a date

certain if he so chooses.  A separate order will issue.


                                                        /s/ Timothy J. Kelly
                                                        TIMOTHY J. KELLY
                                                        United States District Judge

Date: March 23, 2023

15